IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01477-MSK-MJW

ROBERT BRUCE SULLIVAN,

Petitioner,

v.

FEDERAL BUREAU OF PRISONS, et al.,

Respondents.

---

# RECOMMENDATIONS ON
# APPLICATION FOR A WRIT OF HABEAS CORPUS PURSUANT TO
# 28 U.S.C. § 2254 (Docket No. 3),
# PETITIONER'S MOTION FOR DISCOVERY (Docket No. 48), and
# PETITIONER'S MOTION TO ADD DEFENDANT'S [sic] TO CIVIL CASE NO.
# 06-cv-01477-MSK-MJW (Docket No. 52)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 22) issued by District Judge Marcia S. Krieger.

Before the court for a report and recommendation is the pro se petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 3), the timely-filed Answer of Respondent John W. Suthers, the Attorney General of the State of Colorado to Federal Habeas Application (Docket No. 29), and the petitioner's Response thereto (Docket No. 41). Also before the court are the petitioner's Motion for Discovery (Docket No. 48) and Motion to Add Defendant's [sic] to Civil Case No. 06-cv-01477-MSK-MJW (Docket No. 52). The court has reviewed all of these filings and has

considered the court's file and relevant statutes, Federal Rules of Civil Procedure, and case law. The court now being fully informed makes the following findings, conclusions, and recommendation.

Pursuant to 28 U.S.C. § 2254, petitioner challenges a conviction entered following a bench trial in Larimer County District Court of harassment by stalking (a class 5 felony), second degree arson (a class 4 felony), violation of a restraining order (a class 2 misdemeanor), and domestic violence (a sentence enhancer). On December 8, 2000, petitioner was placed on intensive supervised probation for a term of four years, but the state court revoked that probation on February 24, 2003, and re-sentenced him to a term of three years. At the time he commenced this action, petitioner was on parole for those state court convictions and was serving a federal sentence in federal custody at FCI Englewood. He was to be discharged from his state parole on January 6, 2007, and he apparently is now on supervised release on his federal offense.

"In 1996, Congress amended the long-standing prior practice in habeas corpus litigation that gave a prisoner virtually unlimited amounts of time to file a federal habeas petition in federal court." Hoggro v. Boone, 150 F.3d 1223, 1225 (10th Cir. 1998). As enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations for filing a habeas petition is now set forth in 28 U.S.C. § 2244(d)(1). That section provides in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action; . . .

28 U.S.C. § 2244(d)(1). "Direct review" has been construed to include the period within which the petitioner can file a petition for a writ of certiorari from the United States Supreme Court, regardless of whether the petitioner actually files such a petition. See Locke v. Saffle, 237 F.3d 1269, 1272 (10th Cir. 2001). Furthermore, the statute provides the following tolling provision: " The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2241(d)(2). Here, while this court's time calculations vary slightly from the state respondent's calculations, this court agrees with the state respondent that the petitioner's application is untimely.

Petitioner filed a direct appeal of his state court conviction to the Colorado Court of Appeals ("CCA"), which affirmed the judgment of conviction on July 18, 2002. People v. Sullivan, 53 P.3d 1181 (Colo. App. 2002). Petitioner did not file a petition for certiorari in the Colorado Supreme Court, and the AEDPA's one-year limitations period thus began forty-five days after July 18, 2002, which was on August 9, 2002.[1] See Colo. R. App. P. 40(a) and 52(b)(3). Petitioner's *pro se* motion for post-conviction relief

---

[1] Petitioner states that the Mandate was not issued by the CCA until September 27, 2002, and thus asserts that the limitations period began to run on that date. This court does not agree with that assertion, but even using that later date and adding 45 days to it for filing a petition of certiorari (or until November 12, 2002), see Colo. R. App. P. 40(a) and 52(b)(3), his current habeas application was still untimely.

in state court pursuant to Colo. Crim. P. 35(c) was filed **163 days later** on February 20, 2003. That motion was denied by the state district court without a hearing on March 5, 2003, and the petitioner did not file an appeal. Therefore, the statute of limitations began to run again on April 19, 2003, which was 45 days after the entry of the state district court's order denying the motion because under Colorado law, petitioner had 45 days from the date of the entry of the order to file a timely notice of appeal. See Colo. App. R. 4(b)(1); see also Gibson v. Klinger, 232 F.3d 799, 804 (10th Cir. 2000) (limitations period is tolled during the period in which petitioner could have sought an appeal of the denial of a post-conviction application under state law).

The limitations period, however, stopped running again **74 days later**, on July 2, 2003, when the petitioner, through counsel, filed an amended Rule 35(c) motion and a supplementary motion on December 15, 2003. The state district court denied relief without a hearing in a written order on December 17, 2003. Petitioner appealed, and the CCA affirmed on June 9, 2005. People v. Sullivan, No. 04CA0226 (Colo. App. June 9, 2005). The Colorado Supreme Court denied the petition for writ of certiorari on October 24, 2005.[2] The limitations clock then started up again on that date and was not stopped until petitioner placed his federal habeas application in the prison mail, which according to the certificate of service attached thereto (Docket No. 3 at 10) was not until **274 days later** on July 19, 2006. (Docket No. 3).

In sum, even calculating the time period liberally, petitioner clearly filed the

---

[2]The mandate issued on November 2, 2005. Even using this latter date, the federal habeas application here would be untimely. It was dated and purportedly placed in the prison mail 267 days later.

instant application well past the § 2244's one-year limitations period (by the court's calculations: 163 days, plus 74 days, plus 274 days equals 511 days, or 146 days late). In an Order Directing Applicant to Show Cause, filed on August 23, 2006, Magistrate Judge Boyd N. Boland directed the petitioner to show cause in writing why the application should not be denied as barred by the one-year limitation period in 28 U.S.C. § 2244(d). (Docket No. 12). Petitioner filed a very detailed response (Docket No. 15) in which petitioner admits that he was aware of the one-year statute of limitations set by the AEDPA and § 2244 (Docket No. 15), but he asserts he diligently pursued his claims and contends that the time was equitably tolled for a litany of reasons, including the following.

Petitioner allegedly had little time to prepare his 35(c) motion due to his probation obligations (i.e., weekly meetings with his probation officer, counseling sessions twice weekly from 7 to 9 p.m., calling in each morning for instructions on BA's and UA's, performing public service, working at his job eight to ten hours per day) and having to perform the duties of a newly-single custodian parent of his minor son. Furthermore, his home computer was allegedly seized on November 26, 2002, when local law enforcement executed a search of his home as a result of a "criminal episode" involving his son. It was not released to petitioner prior to his resentencing and incarceration on February 24, 2003. That computer allegedly contained all of the petitioner's work on his 35(c) motion. Petitioner alleges that it was an "overbroad and maliciously executed search warrant." (Docket No. 15 at 6). Petitioner admits he had sent duplicate copies of all of his personal files to an out-of-state relative prior to this search, but he did not include any of the work performed on his 35(c) motion. He also notes that family

members sent him a used computer and related equipment so he could recreate his motion, but he claims this took "precious time." (Docket No. 15 at 6). Petitioner ultimately completed and filed that 35(c) motion on February 20, 2003. Petitioner complains that the seizure of his work on the computer impeded him by two months and two weeks, and he asks that the time be deducted from the limitations calculation.

Petitioner further claims he was "stalled" by Larimer County by their inability to produce certain state court transcripts, which he received on or about January 13, 2006.

In addition, petitioner complains that while he "has been incarcerated he has been expected to work, attend designated programs and comply with all of the policies of the institutions that he has been house in, while as a Pro Se' litigant being held to the standard of meeting court deadlines, while encountering problems with copying machine inaccessability [sic], copy card malfunctions (from mid December 2005, till Mid January 2006), [he] could not obtain copies of needed cases to research and makes notes from." (Docket No. 15 at 9-10). He also complains of "lockdowns, law library closure over the Christmas/New Years holiday, and the refusal of the USP Florence - Educational department to allow me time off of my UNICOR job . . . . This impediment amounts to a denial of my lawful legal access to the court system on a timely basis." (Docket No. 15 at 10). He also details the very limited hours a copier was available and notes that the law library at FCI Englewood was open only six days and four nights per week. Petitioner also notes his transfer to a new facility (FCI Englewood from USP Florence) on January 27, 2006, whereby he had to meet with his case manager and was told he needed to seek employment and complete two programs prior to his next team meeting

in August 2006. Nevertheless, he alleges he "has been persistent in his efforts to use all available hours in preparation of his Application for Writ of Habeas Corpus . . . ." While he was completing the two program requirements, he could use the law library only on Tuesday and Wednesday nights and Saturday afternoons. After he completed the programs in June 2006, he spent all available evenings (Monday through Thursday) and Saturday to complete this Application. Furthermore, he asserts that he does not type very fast because he allegedly is missing the tips of two fingers on his right hand, has a manual dexterity impairment, and has a permanent loss of upper and lower flexation of his neck which limits his downward gaze.

The United States Supreme Court has "not decided whether § 2244(d) allows for equitable tolling," Lawrence v. Florida, 127 S. Ct. 1079, 1085 (2007), but the Court has assumed its applicability in some past cases. See id., Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005). The Tenth Circuit, however, applies equitable tolling to the AEDPA's one-year statute of limitations, Yang v. Archuleta, – F.3d –, 2008 WL 1795049, *2 (10th Cir. Apr. 22, 2008), "but only in 'rare and exceptional circumstances.'" Fisher v. Gibson, 262 F.3d 1135, 1143 (10th Cir. 2001). Equitable tolling is recognized in this Circuit only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000), cert. denied, 531 U.S. 1194 (2001). "[A]n inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." Yang, 2008 WL 1795049, *2 (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)). Furthermore, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an

entirely common state of affairs." Id. at *3 (quoting Wallace v. Kato, 127 S.Ct. 1091, 1100 (2007)). "It is 'to be applied sparingly.'" Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarding by courts out of a vague sympathy for particular litigants." Id. (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)).

Considering all of petitioner's excuses as a whole and individually, this court find that this is not one of the very rare cases where equitable tolling should be applied. Petitioner's need to comply with probation obligations and institutional programming requirements are not unusual circumstances for prisoners or former prisoners. Furthermore, petitioner's performance of the duties of a newly-single custodian parent is also not an unusual circumstance. Merely being busy with everyday life, even while incarcerated, is not an extraordinary circumstance beyond one's control which warrants equitable tolling.

Furthermore, while petitioner complains about not having enough access to the law library, photocopiers, and typewriters, such claims, standing alone, do not warrant equitable tolling. See Weibley v. Kaiser, 2002 WL 31478974 (10th Cir. Nov. 6, 2002); Patrick v. Hubbard, 2008 WL 489516 (E.D. Cal. Feb. 20, 2008) (and cases cited therein). Moreover, petitioner admits and details in his response the frequency with which he was able to access the prison law library. In fact, some of his exhibits show that he was given time off from his UNICOR job to work on his brief in support of his habeas petition (see, e.g., Docket No. 15-2 at 28-30). While petitioner is obviously displeased that he was not given more access to the library and copiers and was denied

more time off from his prison job to be able to work on his habeas application, he has made no showing that his library work being limited to certain days and hours and his not being given even more time off from his prison job to do his legal work[3] constitute extraordinary circumstances warranting equitable tolling. Such limitations are an ordinary incident of prison life. "[T]he constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library . . . ." Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996). The court further notes that petitioner's federal habeas application did not have to be typed, nor is there any requirement that it be accompanied by the lengthy brief submitted by petitioner. In addition, any copies of the petition could also have been hand-written. In sum, the limited hours during which the copier and law library were allegedly available to the petitioner do not constitute extraordinary circumstances that warrant equitable tolling.

The court also notes that the petitioner complains about a lock-down of the facility which allegedly further impeded his access to the law library. The alleged lock-down, however, was only for a short period of time in December 2005, namely six days, during the one-year limitation period. Furthermore, "the Supreme Court has recognized lockdowns routinely cause delays in receiving legal materials, but also ruled that 'so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they

---

[3] It appears that after being allowed to work half days for a couple of weeks in order to work on his legal research, his request to be placed as a part-time UNICOR employee was denied because he had been given ample amount of time. It was suggested that he request vacation or change his work assignment to allow him to complete his legal work. (Docket No. 15-2 at 37).

result in actual injury." Pfeil v. Everett, 2001 WL 618209, *4 (10th Cir. June 6, 2001). Therefore, even if this court were to consider petitioner's "lockdown argument as one claiming an impediment under § 2244(d)(1)(B) . . . he has not presented any evidence the lockdown was not related to legitimate penological interests." Id.

The court further notes that the petitioner complains that during a search of his home based upon a search warrant concerning petitioner's son, the state took petitioner's computer on which he was preparing his 35(c) motion. Even if this court were to consider this period of time pursuant to § 2244(d)(1)(B) and were to find that the seizure prevented petitioner from filing the instant habeas application, the court finds that the petitioner has made no showing that the state action of seizing that computer was in violation of the Constitution or laws of the United States.[4] Merely describing the search warrant as "overbroad and maliciously executed" (Docket No. 15 at 6) is insufficient for the court to exclude any time based upon that state action. Furthermore, petitioner admits that he had sent copies of his paperwork (albeit not the actual 35(c) motion) to a family member and that relatives provided him with other computer equipment on which he was able to rewrite his 35(c) motion. There also is no requirement that a habeas petition be typewritten or produced on a computer. In sum, petitioner has not demonstrated how the seizure of the computer impeded his ability to file his federal habeas petition.

The court further finds that equitable tolling is not warranted based upon the time

---

[4] As noted above, § 2244 excludes from the one-year limitations period "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action . . . ." 28 U.S.C. § 2244(d)(1).

it took petitioner to obtain some state court transcripts from the court stenographer, namely, transcripts of a June 19, 2000, motion hearing, and the transcript of an April 20, 2000, proceeding. (Docket No. 15 at 9). Petitioner has not specifically shown how not having these transcripts impeded his ability to file his federal habeas petition, which merely restated many of his 35(c) claims. One of the hearings transcribed (April 20, 2000, hearing) was merely a proceeding during which petitioner was going to enter a guilty plea but then asked for a continuance. (See Docket No. 4-2 at 32-36 & 4-3 at 1-7). Another (June 19, 2000) was merely a motions hearing. "[A]n inmate's lack of state court records does not justify equitable tolling." Owings v. Jones, 2007 WL 1188307, *3 & n.8 (10th Cir. Apr. 19, 2007) (citing United States v. Banuelos-Munoz, 182 F.3d 933, 1999 WL 314616, *2 (10th Cir. May 19, 1999) (disallowing equitable tolling based on obstacles faced by petitioner in obtaining a transcript in part because the facts supporting his claims had not depended on the transcript); West v. Kaiser, 7 Fed. Appx. 821, 823 (10th Cir. Mar. 6, 2001) (holding that a delay in obtaining transcripts did not justify equitable tolling because the petitioner had not demonstrated how unavailability of the materials delayed the filing of a habeas petition); United States v. Pedraza, 166 F.3d 349, 1998 WL 802283 (10th Cir. 1998) (holding that a federal prisoner was not entitled to equitable tolling of the limitations period in 28 U.S.C. § 2255 based on the unavailability of a transcript)); Clark v. Oklahoma, 2006 WL 62843, *4 (W.D. Okla. Jan. 10, 2006) (same). In addition, the court notes that the transcripts were received within two months or less, which is not an extraordinary delay.[5]

---

[5] According to one of the petitioner's exhibits, someone on his behalf requested the April and June 2000 hearing transcripts in November 2005 and sent payment for the

In addition, this court notes petitioner's claim that he does not type or write fast, purportedly because of a physical disability or disabilities. This court finds that petitioner's alleged disability (or disabilities) does not meet the high standard necessary to justify equitable tolling of the AEDPA's limitations period. The mere fact that petitioner may suffer from some physical impairment does not establish that it rendered him unable to pursue his rights during the relevant time period. See Rhodes v. Senkowski, 82 F. Supp.2d 160, 169 (S.D.N.Y. 2000). Indeed, petitioner was able to file a *pro se* state 35(c) motion in a timely manner notwithstanding his purported disabilities, and in this action, petitioner was capable of submitting a 32-page typed response to the Order Directing Applicant to Show Cause in just a few weeks. (Docket No. 15). See Gaston v. Palmer, 417 F.3d 1030 (9th Cir. 2005) (petitioner was able to file a state habeas petition and thus was physically and mentally capable of preparing and filing a petition on that date); Rhodes v. Senkowski, 82 F. Supp.2d 160 (S.D.N.Y. 2000). See also Meadows v. Jacquez, 242 Fed. Appx. 453 (9th Cir. June 26, 2007) (petitioner's ability to file mandamus petitions demonstrated she was mentally capable of preparing and filing a federal habeas petition during the period), cert. denied, 128 S. Ct. 1234 (2008); Smith v. Shared Medical Sys., 2004 WL 1656635 (E.D. Pa. July 23, 2004) (employment case) (Although a claimant has a high bar to meet to establish a basis for equitable tolling based on mental incompetence, the bar is even higher for when it is

---

transcripts on December 12, 2005. (Docket No. 15-2 at 42). According to the petitioner, the transcript for the June 19, 2000, was dated December 19, 2005, and petitioner received it shortly after it was transcribed. Petitioner received the transcript of the April 20, 2000, hearing (which was dated January 4, 2006) on or about January 13, 2006. (Docket No. 15 at 9).

based on physical impairment.).

Finally, the court notes that the petitioner claims in his response that he is innocent. His self-serving assertions of innocence, however, are insufficient to make a colorable showing of innocence. He makes no analysis nor provides specific facts to warrant equitable tolling. See House v. Bell, 547 U.S. 518 (2006) (actual innocence claims require "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."); Schlup v. Delo, 513 U.S. 298, 324 (1995) (same).

In sum, this court finds that the petitioner has not shown the requisite extraordinary circumstances to permit equitable tolling of the limitation period. Therefore, his application should be denied and dismissed as untimely.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 3) be **DENIED** and **DISMISSED WITH PREJUDICE**. It is thus further

**RECOMMENDED** that petitioner's Motion for Discovery (Docket No. 48) and Motion to Add Defendant's [Sic] to Civil Case No. 06-cv-01477-MSK-MJW (Docket No. 52) be denied as moot.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive,**

**or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:     May 2, 2008         <u>s/ Michael J. Watanabe</u>
           Denver, Colorado      Michael J. Watanabe
                                        United States Magistrate Judge