IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01477-MSK

ROBERT BRUCE SULLIVAN,

      Petitioner,

v.

THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondent.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

This matter comes before the Court on the Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (**# 3**) and the Petitioner's Supplemental Memorandum of Law in Support of Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (**# 69**). The Respondent filed an answer (**# 29**) as well as a response to the supplemental memorandum (**# 73**). The Petitioner filed a traverse (**# 41**) as well as a reply to the supplemental memorandum (**# 77**). Having considered the same, along with the state court transcript attached to the Petitioner's supplemental memorandum, the Court

      **FINDS** and **CONCLUDES** that:

### I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 1331.

### II.  Background

The Petitioner was charged in state court with one count of harassment by stalking, one

1

count of second degree arson, two counts of violation of a restraining order, and one count of domestic violence.[1]  The charges stemmed from allegations that, for purposes of harassment, the Petitioner installed a global positioning system ("GPS") tracking device on a car driven by his ex-wife, and also burned several bags of her clothing.  After a trial to the court on October 20, 2000, one count of second degree arson was dismissed and the Petitioner was convicted of the remaining counts.  On December 8, 2000, the state court sentenced the Petitioner to four years of intensive supervised probation and ninety days of jail time on the first count, and four years of intensive supervised probation on the remaining counts, to be served concurrently.[2]

The Petitioner filed a direct appeal on June 4, 2001, and the Colorado Court of Appeals affirmed his conviction on July 18, 2002.  *See People v. Sullivan*, 53 P.3d 1181 (Colo. App. 2002) (Answer at Exhibit D).  A petition for certiorari was not filed with the Colorado Supreme Court.

On February 20, 2003, the Petitioner filed a *pro se* motion for post-conviction relief pursuant to Colo. R. Crim. P. 35(c).  The state court denied the motion without a hearing on March 5, 2003.  The Petitioner filed an amended Rule 35(c) motion through counsel on July 2, 2003, and a supplemental motion on December 15, 2003.  The state court denied the amended motion without a hearing on December 17, 2003.  The Petitioner filed a timely appeal with the Colorado Court of Appeals, but on June 9, 2005, the Court of Appeals affirmed the trial court. *See People v. Sullivan*, 04CA0226 (Colo. App. June 9, 2005) (unpublished decision) (Answer at

---

[1]This general introductory background is taken from the statement of facts in the Petitioner's opening brief on direct appeal.  Answer at Exhibit A, p. 6-7.

[2]On February 24, 2003, the state court revoked the Petitioner's probation and re-sentenced him to the custody of the Colorado Department of Corrections for a term of three years.

Exhibit I).  The Petitioner then filed a petition for writ of certiorari with the Colorado Supreme

Court, which was denied on October 24, 2005.  The mandate issued on November 2, 2005.

The Petitioner filed his *pro se* application in this Court on July 31, 2006.  On May 2,

2008, Magistrate Judge Watanabe recommended that the application be dismissed as untimely

pursuant to the one-year statute of limitations in 28 U.S.C. § 2244(d)(1) (# 55).  On August 6,

2008, the Court found that the application was timely filed pursuant to the statute and declined to

adopt the recommendation of the Magistrate Judge (# 57).  The Petitioner then filed, through

counsel, a supplemental memorandum of law.  In the memorandum, the Petitioner voluntarily

dismissed claims three, four, eight, thirteen, fourteen, fifteen, sixteen, seventeen and eighteen, as

set forth in his original application.[3]  *See* Supp. Mem. at 2, n. 1.

Therefore, now before the Court are the Petitioner's nine remaining claims: (1) that the

Petitioner was denied effective assistance of counsel because counsel had a conflict of interest;

(2) that trial counsel failed to thoroughly investigate the victim's prior inconsistent statements;

(3) that the Petitioner was denied his right to confrontation because "double hearsay" was used

to convict him; (4) that trial counsel failed to contact and interview defense witnesses; (5) that

trial counsel was ineffective for failing to file a motion to suppress; (6) that trial counsel

---

[3]The Court notes that in addition to his Application for a Writ of Habeas Corpus (# 3), the Petitioner also initially filed, *pro se*, both a "Memorandum of Law in Support of Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" (# 4) (the "Memorandum") and an "Affidavit in Support of Application/Memorandum of Law for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" (# 5) (the "Affidavit").  The Application does not contain any of the Petitioner's claims; instead, both his Memorandum and Affidavit set forth his claims in differing order and content.  In answering the Application, the Respondent used the form and content of the claims as listed in the Petitioner's Affidavit.  *See* Answer at 15-33.  The Petitioner apparently does not contest this formatting of his claims, as the supplemental memorandum utilizes the same numbering system.  *See* Supp. Mem. at 2, n. 1.  Accordingly, the Court will also address the Petitioner's claims as they are set forth in his Affidavit.

admitted to the Petitioner on the morning of trial that he was not prepared; (7) that the trial

court's denial of the Petitioner's Rule 35(c) motion without a hearing was contrary to established

federal law; (8) that trial counsel willingly and knowingly denied the Petitioner his right to

effective assistance of counsel; and (9) that trial counsel denied the Petitioner due process of law

because he did not act as the Petitioner's sole advocate.

### III.  Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus

proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*,

502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "When a federal district

court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not

review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."  *Coleman v.

Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion

of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the

state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism

and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's

review.  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173

F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a

habeas petition when the petitioner argues that he is "in custody in violation of the Constitution

or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable." *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v.*

6

*Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows a court to grant a

writ of habeas corpus only if the state court decision was based on an unreasonable

determination of the facts in light of the evidence presented.  Pursuant to § 2254(e)(1), the Court

must presume that the state court's factual determinations are correct and the Petitioner bears the

burden of rebutting the presumption by clear and convincing evidence.  "The standard is

demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"

*Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003)).

 Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not

expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court

"must uphold the state court's summary decision unless [the court's] independent review of the

record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably

applies clearly established federal law, or is based on an unreasonable determination of the facts

in light of the evidence presented."  *Id*. at 1178.  "[T]his 'independent review' should be

distinguished from a full *de novo* review of the petitioner's claims."  *Id*.

## IV. Analysis

### A.  Claim One

 In his first claim, the Petitioner asserts that he was denied his right to effective assistance

of counsel because his trial counsel was "burdened by an actual 'conflict of interest;' [due to] his

own admission that 'he would not do a criminal investigation of the alleged victim, to avoid

aggravating the trial judge.'"  Affidavit at 2.  Respondent argues that this claim is procedurally

defaulted because the Petitioner did not raise it before the Colorado Court of Appeals when he

appealed the denial of his second Rule 35(c) motion.  Answer at 15.

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights.  *See O'Sullivan*, 526 U.S. at 838; *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  Although fair presentation does not require that a habeas corpus petitioner cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  Instead, a claim must be presented as a federal constitutional claim in the highest state court proceedings in order to be exhausted.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Upon review of the Petitioner's post-conviction appeal, the Court finds that his first claim was not presented to the state courts.  *See* Answer at Exhibit F.  Although the Petitioner's appeal contains many of the same allegations of ineffective assistance of counsel as the instant application, the appeal does not present the argument that trial counsel had an actual conflict of interest because he did not conduct a background investigation of the victim in order to avoid "aggravating" the trial judge.  *See id.*  Further, to the extent the claim can be construed more generally to assert that trial counsel simply failed to investigate Ms. Sullivan, this claim is

8

addressed in the Court's discussion of the Petitioner's second claim. Accordingly, the Court finds and concludes that this claim is unexhausted.

If a petitioner has not exhausted his state remedies, his petition is generally denied without prejudice so that he may present his claims to the state court. *See Coleman*, 501 U.S. at 731. However, if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the petitioner is considered to have procedurally defaulted his claims and federal habeas review is precluded. *Id.* at 735 n. 1. Here, no further state court remedy exists as any future claim would be denied as successive under Colo. R. Crim. P. 35(c)(3) because it could have been presented in an appeal or postconviction proceeding previously brought, *see* Rule 35(c)(3)(VII). A federal district court "does not address issues that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (citations omitted). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman,* 501 U.S. at 730. Petitioner does not attempt to provide a basis for a finding of cause and prejudice, and indeed, provides nothing other than the bare assertion that his claims are exhausted. *See* Traverse at 6; Supp. Mem. at 5. Therefore, the Court finds and concludes that the Petitioner's first claim must be dismissed as procedurally defaulted.

### B.  Claim Two

In his second claim, the Petitioner argues that he was denied effective assistance of counsel by trial counsel's failure to "thoroughly investigate the prior inconsistent statements

made by the alleged victim."  Affidavit at 2.  Respondent asserts that this claim is procedurally

barred, because the Petitioner did not raise this specific assertion in the state courts.  Answer at

16.  However, liberally construing the Petitioner's *pro se* Affidavit, and read in the context of the

accompanying Memorandum and Supplemental Memorandum, the Court finds that this claim

was intended to more generally assert that trial counsel failed to thoroughly investigate the

victim prior to trial.  This claim was presented to the state courts during the Petitioner's appeal

of his second Rule 35(c) motion, wherein the Petitioner asserted that trial counsel "failed to

investigate . . . any prosecution witnesses, including the complainant who testified extensively at

trial."  Answer at Exhibit F, p. 7.  Accordingly, the Court finds and concludes that a general

claim that the Petitioner's trial counsel provided ineffective assistance by failing to investigate

the victim was fairly presented to the state courts, and will address the merits of this claim.

In addressing this claim, the appellate court found the following:

> Defendant next contends that counsel rendered ineffective assistance
> because he did not investigate adequately any of the prosecution's witnesses.  We
> do not agree.
>
> Defendant's assertions in his motions were again bare and conclusory.  He
> did not name the alleged witnesses, other than the victim, that counsel should
> have investigated or allege how they would be helpful to his case.  He alleged that
> investigation of prosecution witnesses would have prevented "surprise at trial,"
> but failed to state what surprises, if any, occurred during trial.  We conclude that
> the trial court properly rejected these unsupported and conclusory allegations.

Answer at Exhibit I, p. 8-9.

It was clearly established when the Petitioner was convicted that a defendant has a right

to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To

establish that his trial counsel was ineffective, the Petitioner must demonstrate both that

counsel's performance fell below an objective standard of reasonableness and that counsel's

deficient performance resulted in prejudice to his defense. *See id.* at 687-88. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is the Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Counsel's decisions are presumed to represent "sound trial strategy"; "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotation marks omitted). Under the prejudice prong, the Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If the Petitioner fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

Further, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. "'Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting *United States v. Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir. 1983)). Therefore, "[w]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d

1170, 1181 (10th Cir. 2005) (citing *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002)).

In his supplemental memorandum, the Petitioner argues that if trial counsel had "properly investigated Ms. Sullivan," he would have discovered that she had a prior conviction for driving under the influence, which would demonstrate that the Petitioner installed the GPS device for a reduction in her car insurance rate.  Supp. Mem. at 18.  He further argues that counsel would have discovered that Ms. Sullivan had previously brought charges that the Petitioner had violated the restraining order, which were later dismissed.  *Id.*  The Petitioner argues that these facts, and others, could have been used at trial to impeach Ms. Sullivan's credibility and demonstrate motive.  *See id.*

However, the Court finds that these arguments are unavailing.  In his affidavit, the Petitioner states that trial counsel, Randy Golden, also represented him during his divorce proceedings with Ms. Sullivan.  The Petitioner therefore states that Mr. Golden already knew many things about Ms. Sullivan's past, including, *inter alia*, that they were involved in a contentious divorce, that she had previously made claims regarding violations of the temporary restraining order and that those charges were dismissed, and that she had asked her minor son to obtain illegal drugs for her.  *See* Supp. Mem. at Ex. 1, p. 4.  Moreover, in the affidavit of Casey Mulligan, an attorney retained by the Petitioner for purposes of his post-conviction appeal, he attests that "Mr. Golden informed [him] that [Mr. Golden] did not conduct a background check on Donalyn Sullivan because he had decided not to introduce such evidence because he knew from past experience that the presiding judge would not like it."  *Id.* at Ex. 7, p. 2.  As such, by the Petitioner's own admission, it is apparent that trial counsel was well-informed about Ms. Sullivan's background due to his participation in the divorce proceeding.  It is not clear to the

Court why further investigation of Ms. Sullivan would be necessary if counsel was already well-informed about her due to his participation in the divorce.  Further, the affidavit of Mr. Mulligan demonstrates that trial counsel made the strategic decision not to introduce information from Ms. Sullivan's background because he was aware that such evidence was not regarded favorably by the trial judge.[4]  Here, the Petitioner has made no showing that counsel's failure to produce evidence about Ms. Sullivan's background was not based upon a valid strategic choice, and counsel's "admission" to the Petitioner indicates that he did not believe that such information would be helpful to the case.  *See Bullock*, 297 F.3d at 1047 (finding that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice.").  Accordingly, the "presumption that the attorney's decision was objectively reasonable," attaches to this decision, and it becomes "virtually unchallengeable." *Nguyen*, 413 F.3d at 1181.  Because the Petitioner has not overcome this presumption, the Court finds and concludes that the decision of the appellate court did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

## C. Claim Three

In his third claim, the Petitioner asserts that he was convicted in violation of his "Sixth Amendment right 'to be confronted with the witnesses against him;' [because] the Court convicted [him] with Double Hearsay.'" Affidavit at 2.  Respondent argues that this claim is procedurally barred because it was not presented to the appellate court during the Petitioner's appeal of his second post-conviction motion.  Answer at 17.  The Court agrees that, to the

---

[4]As discussed above, the role of this Court is not to assess the wisdom of a strategic choice to avoid disparaging the victim of the alleged crime.  Such a strategy may be wise or unwise, depending on a host of factors, but it can hardly be said to be objectively unreasonable.

extent this claim asserts that the Petitioner's right to confrontation was violated by admission of double hearsay, it is evident that such a claim was never presented to the state courts. *See* Answer at Exhibit A; Exhibit F. Therefore, as previously set forth, this claim is now both unexhausted and procedurally barred, because the Petitioner again fails to provide any basis for a finding of cause and prejudice or a fundamental miscarriage of justice in this action. *See* Traverse at 6; Supp. Mem. at 5.

However, liberally construing the Petitioner's *pro se* Affidavit and accompanying Memorandum, and read in the context of the Petitioner's Supplemental Memorandum, the Court finds that this claim also asserts that counsel was ineffective for failing to object to inadmissible hearsay evidence. The Petitioner argues that "Officer Pride's testimony regarding what Ms. Sullivan was allegedly told about the GPS unit by her 'friend,' was inadmissible hearsay within hearsay. Because it was not objected to, the trial court relied on this evidence in finding the 'serious emotional distress' element of the harassment by stalking charge." Supp. Mem. at 22.

At trial, Officer Pride, the police officer who investigated the charges against the Petitioner, testified as follows:

> During my interview with Ms. Ms. [sic] Sullivan, she was extremely upset and concerned that Mr. Sullivan had been confronting her about her whereabouts, different times, different places, how she had gotten there. She had some concerns about him possibly following her or tracking her. However, the day before she had ran into a mutual friend of the family at WalMart who shared with her that Mr. Sullivan had been - - I don't know if it was bragging or talking about installing a tracking device on her car. So at that time she asked if I would go out to her car and inspect her car for a tracking device because she was fairly certain that she was being watched.

Supp. Mem. at Ex. 8, p. 15.

In addressing this claim, the appellate court found the following:

> Even if we assume this evidence was improperly admitted, the trial court relied on the victim's testimony to conclude that she suffered serious emotional distress. The trial court found that defendant informed his ex-wife before she knew of the tracking device that he knew where she had been, even though she did not know why or how he obtained the information. Therefore, the expert's assertion of prejudice is not factually sound.

Answer at Exhibit I, p. 11-12.

Even if counsel had grounds to object to the hearsay evidence, to demonstrate ineffective assistance of counsel, more than a simple mistake of law is needed. *See Bullock*, 297 F.3d at 1048. Instead, under the prejudice prong, the Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Like the appellate court, the Court finds that the Petitioner was not prejudiced by counsel's failure to object to the hearsay, because it does not appear that the trial court relied upon on this evidence in making its finding of serious emotional distress. Instead, in ruling on the charge of harassment by stalking, the trial court relied upon Ms. Sullivan's testimony that the Petitioner <u>himself</u> had informed her that he had "significant knowledge" about her whereabouts, which caused her to feel emotional distress. *See* Supp. Mem. at Exhibit 8, p. 151-52. As such, the Petitioner cannot demonstrate that he was prejudiced by this mistake. *See Rompilla v. Beard*, 545 U.S. 374, 405 (2005) (Kennedy, J., dissenting) (noting that the defendant bears the burden of proving prejudice); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Accordingly, the Court finds and concludes that the decision of the appellate court did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

**D. Claim Four**

In his fourth claim, the Petitioner alleges that he provided the names and contact information for certain defense witnesses, but that counsel unreasonably failed to contact these witnesses. Affidavit at 2; Supp. Mem. at 16-17. The Petitioner asserts that counsel should have contacted Art Edwards, an insurance agent, to testify that he told the Petitioner that his car insurance rate would be reduced if the Petitioner installed a GPS device in Ms. Sullivan's car. Supp. Mem. at 6. He also argues that counsel should have contacted Kate Bafia, the Petitioner's neighbor, to testify that she was given access to the bags of clothing prior to the Petitioner burning them, because Ms. Sullivan told Ms. Bafia that she no longer wanted the clothing. *Id.* at 6-7. Finally, the Petitioner argues that counsel should have contacted the Petitioner's sons, Jason and Brandon Sullivan, to testify that the GPS unit had been installed to receive a discounted insurance rate, and that the clothes had been abandoned by Ms. Sullivan. *Id.* at 7. These claims were presented with much less specificity in state court. In addressing them, the appellate court simply dismissed them as "bare and conclusory." Answer at Exhibit I, p. 8.

First, the Petitioner argues the testimony of Mr. Edwards and Jason and Brandon Sullivan would have established that the GPS unit was installed for the legitimate purpose of receiving a reduction in car insurance. At the time of the Petitioner's conviction, the crime of harassment by stalking required proof that: "with intent to harass, annoy, or alarm another person, [a person] . . . . knowingly . . . . places under surveillance, or makes any form of communication with another person . . . in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress." Colo. Rev. Stat. 18-9-111(4)(B)(III) (2000). The Petitioner appears to assert that the testimony of these witnesses would have proved that he had no intent to harass Ms. Sullivan.

Indeed, the Petitioner testified to the fact that the GPS unit was placed in the car for insurance purposes.  *See* Supp. Mem. at Exhibit 8, p. 93-94.  However, he also testified that he had accessed the device to get information from the device regarding Ms. Sullivan's whereabouts.  *Id*. at 101.  Likewise, the Petitioner's son, Jason Sullivan, testified he had removed the GPS unit for the Petitioner "and put it downstairs in the lap top case so the data could be recorded."  *Id.* at 29.  Jason Sullivan then testified that he later saw maps on the computer that indicated that the GPS data had been recorded and accessed.  *Id.* at 30.  He stated "basically what it did was it would bring up a map and show you routes taken, . . . , and it was a colored line and it would give you the speed that the vehicle was traveling at certain times . . . it could compile the data and it would give you addresses of where - - say, where the vehicle was for long periods of time."  *Id.*

In addition, Ms. Sullivan testified that she had begun to suspect that the Petitioner was tracking her whereabouts because "[h]e would give me specific dates and times of where I would be and how many minutes I would be at that address and he would ask me what I was doing there."  *Id.* at 40.  She also testified that when she moved to a new apartment, the Petitioner told her that he knew the location of her apartment, as well as her landlady's name, even though she had never disclosed to him, or anyone else, the location of her new apartment.  *Id.* at 40-41.  Ms. Sullivan testified that, due to her belief that the Petitioner was following her, she began experiencing stomach aches, difficulty sleeping and anxiety.  *Id.*

Based upon the Court's review of the record of the trial, the Court finds that, even assuming some deficiency on the part of counsel in failing to contact or call these witnesses, the Petitioner has not demonstrated the requisite prejudice.  That is, even if the Petitioner called

additional witnesses to bolster his testimony that he installed the GPS unit for reduced car insurance, this would not mitigate the fact that it was shown at trial that the Petitioner accessed data from the GPS unit and then used this data to harass Ms. Sullivan. Indeed, in finding that the prosecution had proved each element of the charge of harassment by stalking, the trial court noted that the Petitioner had called Ms. Sullivan's attention to the fact that he was somehow aware of different locations that she had visited and how long she had stayed there, and that providing this information to someone within the context of a difficult divorce would naturally cause serious emotional distress. *See* Supp. Mem. at Exhibit 8, p. 149-52.

Considering the above, the Court finds that any additional testimony that the GPS unit was installed for the purposes of an insurance policy would not have changed the outcome of the trial. Accepting as true the claim that the GPS unit was installed for a legitimate purpose does not change the fact that the Petitioner thereafter accessed the data from the unit for a different, impermissible purpose – to determine Ms. Sullivan's whereabouts and to inform her of his knowledge of those wherreabouts. This alone would constitute the crime of harssment by stalking, in that the Petitioner harbored the requisite intent to harass Ms. Sullivan, that he knowingly accessed the GPS unit to ascertain her whereabouts (*i.e.* that he engaged in "surveilance" of her), and moreover, that he communicated his knowledge about her activities in a manner that would cause a reasonable person to suffer serious emotional distress. Even assuming that counsel erred by not calling these witnesses, the Court finds that the Petitioner has not demonstrate that he was prejudiced by this mistake, as the testimony would have been cumulative and not truly probative of anything actually at issue in the case. *See Medina v. Barnes*, 71 F.3d 363, 367 (10th Cir. 1995) (rejecting petitioner's claim of ineffective assistance

based on counsel's failure to obtain witness testimony which would have been "at most cumulative, and of limited probative value"). Therefore, the Court finds that the Petitioner has not established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and this claim must be dismissed. *Strickland*, 466 U.S. at 694.

Second, the Petitioner asserts that trial counsel failed to contact a neighbor, Kate Bafia, to testify that she was given access to the clothing because Ms. Sullivan told Ms. Bafia that she no longer wanted it. *See* Supp. Mem. at 7. The Petitioner apparently contends that this testimony would have refuted the charge of second degree arson. At the time of the Petitioner's conviction, the elements of second degree arson under Colorado law were: "[a] person who knowingly sets fire to, burns, causes to be burned . . . or causes to be damaged or destroyed, any property of another without his consent, other than a building or occupied structure, commits second degree arson." Colo. Rev. Stat. § 18-4-103(1) (2000). Further, under that statute, second degree arson is a class four felony if the damage is found to be one hundred dollars or more. *See id.* at (2). It was undisputed at trial that the Petitioner set fire to clothes belonging to Ms. Sullivan, and that he caused these clothes to be destroyed. However, both the Petitioner and Jason Sullivan testified to the defense theory that the clothes had been abandoned by Ms. Sullivan.

The trial court noted that the Petitioner's counsel had established that there were several bags of clothing that Ms. Sullivan had apparently abandoned, but also found that:

> [W]hat has been proved beyond a reasonable doubt is that [Ms. Sullivan] had significant clothing items at the house, they were under the control of Mr. Sullivan - - the actual control. . . . He said he would burn them. In fact, he said it repeatedly. He then said, in the present tense, that he was burning them. She heard the sirens, there was in fact a call, the fire people did show up, they went to the backyard, it was in fact clothing that was being burned and she's never seen

those items since.  The People did present a long list of things that the
complaining witness believes were burned.  Some of them are here.  Clearly those
items were not burned.  I don't think that detracts from the proposition that he had
possession or control of her clothes. . . . If these things were abandoned, if they
were just stuffed in a bag somewhere that the cat had urinated on, they needed to
be destroyed.  Why call her up and threaten to do it? Why tell her?  These were
folks in a divorce.  There were hard feelings.  He wanted her to do things she
didn't want. . . . Why on earth would he say, "I'm going to burn these clothes.
Remember the clothes you abandoned six months ago?"  If they are just a bunch
of trash, she would say, "Go ahead, burn them."  That clearly is not what
happened here.  Clearly they were clothes of some value.

Supp. Mem. at Exhibit 8, p. 145-47.

The trial court considered the theory that Ms. Sullivan had abandoned these clothes, but

instead found that the prosecution had established that a sufficient amount of un-abandoned

clothing  was under the Petitioner's control at the time of the fire.  Further, the trial court

reasonably concluded that the Petitioner intended to burn clothing of value because he called Ms.

Sullivan prior to setting the fire and informed her in a threatening manner that he intended to do

so.  Indeed, while the Petitioner did not characterize his phone call as "threatening," upon cross-

examination he admitted that he called Ms. Sullivan prior to burning the clothes to inform her

that he was doing to do so.  *Id.* at 105.

Considering all of the above, and the fact that both the Petitioner and Jason Sullivan

testified that the Petitioner intended to burn only abandoned clothes, the Court finds that any

additional testimony to this effect would have been no more than cumulative.  *See Medina*, 71

F.3d at 367.  Further, the decision of which witnesses to call is quintessentially a matter of

strategy for the trial attorney.  *See United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981)

("Whether to call a particular witness is a tactical decision and, thus, a 'matter of discretion' for

trial counsel."); *Boyd*, 179 F.3d at 915 (finding that decisions regarding impeaching witnesses

and introducing evidence as matters of "trial strategy and tactics").  The Petitioner has not

established that trial counsel's failure to call this cumulative witness was not a matter of trial

strategy, and also has not established "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

U.S. at 694.  Therefore, the Court finds and concludes that this claim must be dismissed.

### E.  Claim Five

In his fifth claim, the Petitioner asserts that he was provided ineffective assistance of

counsel because his trial counsel failed to file a pre-trial motion to suppress "illegally obtained

statements."  Affidavit at 2-3.

In addressing this claim, the appellate court found the following:

> Defendant's motion alleged generally that the evidence and statements
> were obtained "either without a warrant" or through the use of a "defective
> warrant."  However, defendant did not identify what evidence and statements
> could have been suppressed.  He did not specify what evidence was obtained
> without a warrant or allege any grounds for challenging the allegedly defective
> warrant.  Therefore, the trial court properly rejected this claim as unsupported by
> sufficient factual allegations.  (citation omitted).

Answer at Exhibit I, p. 7.

In his supplemental memorandum, the Petitioner merely states that "[h]ad counsel moved

to suppress the statements, he would have succeeded," without providing any support for this

conclusion other than general cites to the Supreme Court cases *Miranda v. Arizona*, 384 U.S.

436 (1966) and *Missouri v. Seibert,* 542 U.S. 600 (2004).  Supp. Mem. at 19.  Although the

Petitioner asserts that "these statements were relied on by the trial court in rendering its verdict,"

he does not identify the statements nor how they were relied upon by the trial court.  The

Petitioner's conclusory allegations without supporting factual averments are insufficient to

21

support a claim of ineffective assistance of counsel.  *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  Further, the mere fact that counsel did not file a motion to suppress is not sufficient grounds to support a claim of ineffective assistance of counsel, and in the absence of any showing that this strategy was unreasonable, the Court will not second guess counsel's decision.  *See Chandler v. United States*, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (finding that even if the record is incomplete or unclear about counsel's actions, it is still presumed that counsel exercised reasonable professional judgment); *see also Barkell v. Crouse*, 468 F.3d 684, 690 (10th Cir. 2006) (noting that "an attorney does not provide deficient representation by failing to pursue an unfounded motion, regardless of the possible tactical advantages that might result from doing so.  Indeed, we would fault an attorney for intentionally abusing the judicial process in that manner") (citation omitted)).  Accordingly, the Court finds and concludes that the decision of the appellate court did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### F.  Claim Six

In his sixth claim, Petitioner asserts that his trial counsel "admitted to [him] on the morning of [his] trial, '<u>that he had not prepared for trial</u>,' believing that he would persuade [the Petitioner] to accept the plea agreement, and not go to trial."  Affidavit at 3 (emphasis in original).  Respondent asserts that this claim is procedurally defaulted, because the Petitioner did not raise this specific allegation during his post-conviction appeal in state court.  Answer at 20. Upon review of the Petitioner's post-conviction motion, the Court finds that this claim regarding counsel's alleged admission was never presented to the state courts.  *See* Answer at Exhibit A; Exhibit F.  Therefore, as previously set forth, this claim is now both unexhausted and

procedurally barred, because the Petitioner has again failed to provide any basis for a finding of cause and prejudice or a fundamental miscarriage of justice in this action. *See* Traverse at 6; Supp. Mem. at 5.

However, liberally construing the Petitioner's *pro se* Affidavit and accompanying Memorandum, and read in the context of the Petitioner's Supplemental Memorandum, the Court finds that this claim also more generally asserts that trial counsel was simply unprepared for trial, a claim that was raised before the state courts. *See* Answer at Exhibit A. Within this claim, the Petitioner asserts that trial counsel failed to review "exculpatory" evidence, and also failed to prepare an opening statement or effective direct and cross-examinations. *See* Supp. Mem. at 19-21.

### 1.  Failure to Review Evidence

The Petitioner argues that counsel failed to review prior to trial eight boxes of Ms. Sullivan's clothing collected by the Petitioner. *See* Supp. Mem. at 19. The Petitioner asserts that "[h]ad counsel reviewed the clothing before trial, he could have utilized it to impeach Ms. Sullivan on cross-examination and to demonstrate, through his own client, that clothing she alleged had been burned was actually before the court. He did neither." Supp. Mem. at 20.

In addressing this claim, the appellate court found the following:

> The expert also claimed that trial counsel should have gone through eight boxes of clothing evidence piece by piece to establish reasonable doubt as to the value of the burned items. However, defendant was convicted of second degree arson as a class four felony, which requires only that the damage to another's property be $100 or more. See § 18-4-103(1), C.R.S. 2004.

> Our review of the record discloses that the evidence, as accepted by the trier of fact, was more than sufficient to establish a value of more than $100. Thus, prejudice has not been demonstrated here.

Answer at Exhibit I, p. 12-13.

The Court's review of the record demonstrates that trial counsel used this evidence at trial to effectively establish that there was clothing present in court that Ms. Sullivan previously identified as having been destroyed. First, while the Petitioner was on the stand, trial counsel discussed the issue of the eight boxes of clothing that the Petitioner had brought to court. Counsel asked the Petitioner whether there was any correlation between the list of clothing identified as burned by Ms. Sullivan in the People's Exhibit 5, and the clothes in the boxes, admitted as Defendant's Exhibit B. The Petitioner stated that there were "numerous items that match what she says were burned and what I am providing." Supp. Mem. at Exhibit 8, p. 84. Although trial counsel initially stated that he would only go through one box of clothing to "build some credibility," the record reflects that counsel actually examined the contents of at least three boxes of clothing, and established that the clothing present in court appeared to match the description of some of the clothing that Ms. Sullivan had identified as destroyed. *Id.* at 88-91. Second, during his cross-examination of Ms. Sullivan, trial counsel questioned her regarding the lists of clothing, and established that her clothing list may not have been accurate because she had created it from memory alone, and not based on a review of her inventory of clothing. *Id.* at 122-23. Counsel then established that there were clothes present in court that matched the description of clothing she had believed was burned. *Id.*

Further, in ruling, the trial court noted that the Petitioner's counsel had demonstrated that some clothing was present in court that Ms. Sullivan had alleged were burned, but even so, found that the People had established that the value of the clothing burned was in excess of one hundred dollars. *Id.* at 147. The trial court found that,

> [Ms. Sullivan's] estimate is $3400's worth of clothing has been destroyed by the defendant.  I think the facts here are sufficiently unclear as to precision, that no one can say it was 3400 or 3200 or 3500.  But even if we assume she was wrong by a thousand, that it was 2400, or wrong by another thousand, that it was 1400, the People's evidence is such that it's way beyond the amount that they have to prove to meet the element of the offense.

*Id.* at 146-147.

Based upon the above, the Court finds that, even assuming that the Petitioner's trial counsel failed to review the evidence prior to trial, it was used effectively by trial counsel during trial.  The Petitioner has not established that counsel's performance was deficient, nor "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Accordingly, the Court finds and concludes that the decision of the appellate court did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### 2.  Failure to Prepare

Here, the Petitioner asserts that trial counsel failed to prepare an opening statement, as well as direct and cross-examinations.  Supp. Mem. at 20.  In addressing this claim, the state appellate court found as follows:

> Defendant asserted that trial counsel was ineffective because he failed to present an opening statement, thereby allowing the prosecution's theory of the case to go unchallenged.  However, defendant failed to explain how the lack of an opening statement undermined the outcome of the case.

> He further claims counsel did not prepare adequately for direct or cross-examination of witnesses and failed to object timely to evidence admitted at trial.  In fact, trial counsel challenged the prosecution's presentation of its case throughout the trial.  Further, defendant failed to identify any instances of counsel's allegedly insufficient questioning, and he failed to explain what objections counsel could have made to the evidence at trial or what evidence would have been excluded as a result.
>
> . . .

Therefore, the trial court properly rejected these assertions of ineffective assistance of counsel.

Answer at Exhibit I, p. 9-10.

The Petitioner argues that trial counsel's "lack of preparation was borne out in the trial transcript by the fact that trial counsel did not present any opening statement at all, did not ask prosecution witnesses about relevant issues of fact, did not present at least two key witnesses . . . and presented only minimally helpful testimony from the witnesses actually called on Mr. Sullivan's behalf . . . ." Supp. Mem. at 20. "The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler*, 218 F.3d at 1313 (citations omitted). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable." *Id.* However, to prove ineffective assistance of counsel, more than a simple mistake of law is needed. *See Bullock*, 297 F.3d at 1048. Instead, the Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here, the thrust of the Petitioner's claim is that trial counsel failed to "formulate[] a theory of defense." Supp. Mem. at 20. However, based upon the Court's review of the record, the Court finds that, although trial counsel did not present an opening statement,  this omission does not demonstrate that trial counsel failed to present a theory of defense. After all, as set forth above, trial counsel effectively reviewed the boxes of clothing to demonstrate that at least some of the clothing Ms. Sullivan claimed was destroyed had not been destroyed, as well as effectively cross-examined Ms. Sullivan to create questions as to her credibility and motives. *See* Supp. Mem. at Exhibit 8.  Moreover, although the Petitioner asserts that trial counsel failed to call two

"key witnesses," or Mr. Edwards and Ms. Bafia, the Court's previous review of this claim demonstrates that these witnesses were cumulative at best, and that the Petitioner was not prejudiced by trial counsel's failure to call them.  Like the appellate court, the Court finds that the Petitioner's conclusory allegations without supporting factual averments are insufficient to support a claim of ineffective assistance of counsel.  *Fisher*, 38 F.3d at 1147.  Accordingly, the Court finds and concludes that the decision of the appellate court did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### G.  Claim Seven

In his seventh claim, the Petitioner argues that the trial court's denial of his Rule 35(c) motion without an evidentiary hearing was "contrary to Federal Law and controlling Supreme Court precedent."  Affidavit at 3.

However, there is no federal constitutional right to post-conviction review in the state courts.  *See Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987).  A claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the petitioner's] incarceration . . . states no cognizable federal habeas claim." *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (citations omitted); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that a petitioner's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding).  Because the Petitioner's seventh claim challenges only the state courts' treatment of his postconviction motion, and therefore does not implicate the validity of his conviction or sentence, this claim must be dismissed.

### H.  Claims Eight and Nine

In his eighth claim, the Petitioner asserts that trial counsel "willing and knowingly" deprived him of his constitutional right to effective assistance of counsel.  Affidavit at 3.  In his ninth claim, the Petitioner asserts that trial counsel denied him his constitutional right to due process of law because "he did not act as [the Petitioner's] sole advocate . . . ."  *Id.*  These claims redundantly assert that the Petitioner was denied his constitutional right to effective assistance of counsel, and do not contain any argument that has not already been addressed by the Court in its prior discussion of the Petitioner's claims.  Accordingly, the Court finds and concludes that they are without merit and must be dismissed.

### I.  Evidentiary Hearing

Finally, the Petitioner requests that this Court conduct an evidentiary hearing.  A Petitioner is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel "so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief."  *Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006) (internal quotation marks and citations omitted); *see also Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1998). Consistent with this standard, "an evidentiary hearing is unnecessary if the claim can be resolved on the record."  *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").  As the Court has determined that the Petitioner's allegations are contravened by the factual record and he is not entitled to habeas relief, the Court need not conduct an evidentiary hearing.  *See id.*

Accordingly, the Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 (**# 3**) is **DENIED**.   The Clerk of the Court shall close this case..

Dated this 29th day of September, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge